CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

11/07/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MAINOR ALBERTO RAMOS-DELCID, <br><br> *Defendant.* | CASE NO. 3:18-cr-00020 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Mainor Alberto Ramos-Delcid's motion to dismiss the indictment. (Dkt. 23). The indictment contains one count, charging Ramos-Delcid with illegally reentering the United States in violation of 8 U.S.C. § 1326. (Dkt. 14). Ramos-Delcid argues that the indictment should be dismissed because the notice to appear issued to him following his apprehension by Border Patrol failed to specify the time and date of the removal proceedings against him, as required by 8 U.S.C. § 1229(a)(1) and *Pereira v. Sessions*, 138 S.Ct. 2105 (2018). Ramos-Delcid advances two specific attacks on the indictment. First, Ramos-Delcid argues that without a valid notice to appear, subject matter jurisdiction never vested in the immigration court, rendering that court's deportation order a legal nullity. Second, Ramos-Delcid launches a collateral attack against his deportation order under 8 U.S.C. § 1326(d), arguing that his initial deportation proceedings lacked fundamental fairness.

Although conceding that the notice to appear issued to Ramos-Delcid was defective under § 1229(a)(1) and *Pereira*, the Government argues that the indictment should be upheld for two reasons. First, the Government asserts that federal regulations, not § 1229(a)(1) or *Pereira*, control when and how subject matter jurisdiction vests in an immigration court, and these regulations do not require that a notice to appear list the time and place of any removal

1

proceeding. Second, the Government contends that Ramos-Delcid's collateral attack under § 1326(d) fails because Ramos-Delcid cannot show that he exhausted administrative remedies, that he was deprived of an opportunity for judicial review, or that his deportation proceedings were fundamentally unfair.

The Government is correct that the immigration court had subject matter jurisdiction over Ramos-Delcid's deportation proceedings under the governing federal regulations. However, Ramos-Delcid's collateral attack on the underlying deportation order under § 1326(d) prevails because the notice to appear he received was defective under *Pereira* and § 1229(a)(1), no evidence establishes that Ramos-Delcid ever received actual notice of the time and date of any hearing in the deportation proceedings, the immigration court issued a deportation order with Ramos-Delcid *in abstentia*, and Ramos-Delcid can show a reasonable probability that, but for these deficiencies, he would not have been deported. Accordingly, the indictment has been dismissed with prejudice and the case stricken from the Court's active docket. (Dkt. 31).

## I. FACTS & KEY PRECEDENT

### A. Factual Background

On September 4, 2018, Mainor Alberto Ramos-Delcid was indicted on one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326. (Dkt. 14). Ramos-Delcid, allegedly a citizen of Honduras, was initially apprehended by Border Patrol on July 6, 2002. Before releasing Ramos-Delcid in Charlottesville, Virginia, immigration officials served him with a notice to appear on July 11, 2002. (Dkt. 23-2). This notice to appear ordered Ramos-Delcid to appear in San Antonio, Texas on "a date to be set" and at "a time to be set" to "show why [he] should not be removed from the United States." (*Id*.). The notice nowhere specified the time or date when Ramos-Delcid should appear but warned that, if he failed to appear, "a

2

removal order may be made by the immigration judge in your absence." (*Id*. at 2).[1]  Moreover, the notice to appear erroneously listed Ramos-Delcid's city, state, and zip code as "Charlsville, VA 24175" rather than "Charlottesville, VA 22901."  (Dkt. 23-2 at 1; Dkt. 28 at 2).  On July 12, 2002—the day after he received the notice to appear but before his release—Ramos-Delcid listed the correct Charlottesville, Virginia address on his bond paperwork.  (Dkt. 23-6).

On September 26, 2002, the immigration court attempted to mail Ramos-Delcid a "notice of hearing" specifying the date, time, and location of his "master hearing"[2] but this notice was mailed to the erroneous "Charlsville, VA 24175" address listed on the notice to appear issued in person to Ramos-Delcid.  (Dkt. 29 at 3).  This notice again warned Ramos-Delcid that failure to attend the "master hearing" could result in the issuance of a deportation order against him *in abstentia*.  (*Id*.).  On November 4, 2002, an immigration judge in San Antonio, Texas issued a deportation order against Ramos-Delcid with Ramos-Delcid *in abstentia*.  (Dkt. 23-1).  Ramos-Delcid has allegedly been removed to Honduras twice on the basis of this November 4, 2002 deportation order, first in July 2011 and again in August 2011.  (Dkt. 27 at 3).  According to the

---

[1] "The consequences of a noncitizen's failure to appear at a removal proceeding can be quite severe."  *Pereira v. Sessions*, 138 S.Ct. 2105, 2111 (2018).  "If a noncitizen who has been properly served" with a notice to appear pursuant to 8 U.S.C. § 1229(a) fails to appear at his removal proceeding, § 1229a(b)(5)(A) permits an immigration court to order him "removed in abstentia" if the Government "establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable."  *Id*.

[2] The "master hearing" referenced in the September 26, 2002 "notice of hearing" appears to refer to a "master calendar hearing."  A master calendar hearing is "typically an alien's first appearance" before an immigration judge in removal proceedings.  *Mejia v. Sessions*, 866 F.3d 573, 577 n.2 (4th Cir. 2017).  "As a general matter, the purpose of the hearing is to explain to the alien the charges of removability, advise the alien of her rights in the proceedings, ask the alien whether she admits or denies the factual allegations and her removability under the charges, and schedule additional hearings."  *Id*.  The master calendar hearing is also the setting where an alien's case is "initially calendared for a merits hearing," and an alien can move for voluntary departure "prior to or at the master calendar hearing."  8 C.F.R. § 1240.26(b)(1)(i).  *See also* 8 C.F.R. § 1240.10 (delineating information immigration court just must impart at hearing).

indictment, (dkt. 14), immigration officials encountered Ramos-Delcid in the United States again on August 3, 2018, and the illegal reentry charge at issue here followed.

    **B.**    *Pereira v. Sessions* **(2018)**

In *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), the Supreme Court considered whether "notices to appear" in deportation proceedings that do not specify the time and place of removal proceedings against a noncitizen qualify as "notices to appear" under 8 U.S.C. § 1229(a)(1) for purposes of the "stop-time rule" under 8 U.S.C. § 1229b(d).[3] The Court held that such notices to appear are not true "notices to appear" as defined by § 1229(a)(1). *Pereira*, 138 S.Ct. at 2113–14. The Court's holding rested primarily on the plain text of § 1229(a)(1), which requires that a "notice to appear" be given to noncitizens facing removal proceedings, and defines a "notice to appear" as "written notice" specifying certain information, including the "time and place at which the proceedings will be held." *Id*. The Court noted that "common sense compels the conclusion" that if the "three words 'notice to appear' mean anything . . . they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, *i.e.*, the 'time' and 'place,' that would enable them 'to appear' at the removal hearing." *Id*. at 2115. The parties now dispute how *Pereira* applies in contexts beyond application of the stop-time rule, namely in illegal reentry prosecutions where, as here, the underlying notice to appear provided to the noncitizen and filed with the immigration court fails to specify the time and date of the removal proceedings.

---

[3]     Under § 1229b(d)—a statutory section not at issue here but important to understanding *Pereira*'s holding—the Attorney General can cancel removal of non-permanent residents who have at least ten years of continuous presence in the United States and permanent residents who have at least seven years of continuous presence in the United States. Under the "stop-time" rule, these periods end when the Government serves a "notice to appear" as defined by § 1229(a)(1). *See Pereira*, 138 S.Ct. at 2110.

## II. STANDARD OF REVIEW

Criminal defendants may allege defects in indictments in pretrial motions, including "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). *See also United States v. Daniels*, 873 F.2d 272, 274 (4th Cir. 1992) ("An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense."). A reviewing court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F.Supp.2d 634, 636 (W.D. Va. 1999). If the facts in the indictment would "constitute a criminal offense, the court should not dismiss the indictment." *Id*. Although a court "may dismiss an indictment where there is an infirmity of law in the prosecution," a court should "not dismiss an indictment on a determination of facts that should be developed at trial." *Id*.

Collateral attacks of deportation orders are authorized where, as here, those orders are necessary to establish an element of the charged illegal reentry offense.[4] *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used

---

[4] The elements of illegal reentry under 8 U.S.C. § 1326 are as follows: (1) the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) the defendant thereafter "enters, attempts to enter, or is at any time found in the United States" without express advance consent from the Attorney General. 8 U.S.C. § 1326(a). The Fourth Circuit has recognized that a valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

5

to establish an element of a criminal offense"). Under § 1326(d), a defendant mounting a collateral attack against an underlying deportation order must show (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review; and (3) entry of the order was "fundamentally unfair." If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

### III. ANALYSIS

Ramos-Delcid advances two arguments in support of his motion to dismiss the indictment. First, he argues the indictment should be dismissed because subject matter jurisdiction never vested in the immigration court. Second, he contends the indictment should be dismissed under the factors set forth for a collateral attack on a deportation order in 8 U.S.C. § 1326(d). The Court addresses each argument in turn below, declining to dismiss the indictment on jurisdictional grounds but finding dismissal warranted under § 1326(d).

### A. Immigration Court's Subject Matter Jurisdiction over Removal Proceeding

Ramos-Delcid first argues that the indictment should be dismissed because the allegedly deficient notice to appear issued to him prevented subject matter jurisdiction from vesting in the immigration court. Ramos-Delcid contends that a "removal proceeding commence[s]—and jurisdiction vests with the Immigration Court—only by the filing of a charging document" such as a notice to appear, which *Pereira* and § 1229(a) establish must contain the time and place of the removal proceedings. (Dkt. 23 at 4). Ramos-Delcid argues that where a notice to appear "fails to include notification of the time and place of a removal hearing, the document does not

qualify as a charging document so as to confer jurisdiction over an alien" to the immigration court, rendering any subsequent deportation *ultra vires* and void. (*Id*. at 7).

This argument fails. Neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, separate federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction.[5] Specifically, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." For all proceedings "initiated after April 1, 1997," a "charging document" is defined by a separate regulation to "include a Notice to Appear." 8 C.F.R. § 1003.13. Yet another regulation— 8 C.F.R. § 1003.15(b)-(c)—lists the specific items that must be included in a notice to appear filed with the immigration court for jurisdictional purposes.

Section 1003.15(b) lists seven items a notice to appear must contain, including (1) "the nature of the proceedings against the alien"; (2) the legal authority underlying those proceedings; (3) the "acts or conduct alleged to be in violation of law"; (4) the "charges against the alien" and attendant statutory provisions; (5) notice that "the alien may be represented, at no cost to the government, by counsel" or other authorized representative; (6) the address of the immigration court where the notice to appear will be filed; and (7) a statement that the alien must advise the immigration court of "his or her current address and telephone number" and that failure to do so

---

[5] As the Government correctly asserts, (dkt. 27 at 4–5), Congress explicitly granted the Attorney General authority to "establish such regulations" as he "determines to be necessary for carrying out" the Immigration and Nationality Act. 8 U.S.C. § 1103(g)(2). Pursuant to this statutory delegation, the Attorney General promulgated a comprehensive regulatory framework governing immigration court proceedings, including regulations concerning when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. *See generally* 8 C.F.R. § 1003.

may result in the issuance of a deportation order with the alien *in abstentia*. The time and place of the removal proceedings is not among the required criteria listed in § 1003.15(b). *See* 8 C.F.R. § 1003.15(b).

Section 1003.15(c)—entitled "Contents of the Notice to Appear for removal proceedings"—lists five additional items that must be provided to the immigration court in a notice to appear, including (1) the alien's name and any known aliases; (2) the alien's address; (3) the alien's registration number; (4) the alien's alleged nationality and citizenship; and (5) the language that the alien understands. Here again, the time and place of the deportation hearing is not among the required criteria. *See* 8 C.F.R. § 1003.15(c). Neither § 1003.15(b) nor § 1003.15(b) cross-reference 8 U.S.C. § 1229(a)(1).

By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes, *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear "given . . . to the alien" either in person, by mail, or by delivery to the alien's counsel.[6] Section 1229(a)(1)(A)-(G) lists ten items that must

---

[6] At oral argument, defense counsel argued that because 8 C.F.R. § 1003.15 and 8 U.S.C. § 1229(a)(1) refer to the same notice to appear, the content requirements listed in § 1229(a)(1) and further clarified by *Pereira* must be read into the content requirements listed in § 1003.15. Counsel contended that any other reading of the statutory and regulatory scheme would be absurd. Counsel may be correct that the same notice to appear issued to the alien pursuant to § 1229(a)(1) is often, if not always, the same notice to appear filed with the immigration court for jurisdictional purposes pursuant to § 1003.14 and § 1003.15. But the conclusions counsel draws from this point are flawed in two respects. First, even if the statute and the regulations refer to the same notice to appear, it does not necessarily follow that the time and place criteria listed in § 1229(a)(1) for purposes of providing notice to the alien must be imported into § 1003.14 and § 1003.15, which serve the distinct purpose of establishing the immigration court's subject matter jurisdiction. Second, it is not at all absurd that, under the current statutory and regulatory scheme, the contents of the same notice to appear filed with the immigration court and provided to an alien could be sufficient for subject matter jurisdiction purposes under 8 C.F.R. § 1003 but deficient for notice purposes under *Pereira* and 8 U.S.C. § 1229(a)(1). These provisions serve different purposes, and the Court declines to read the two provisions as requiring identical criteria when *Pereira* does not so require and the two provisions are workable as written.

be specified in notices to appear given to the alien, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Neither § 1229(a)(1) nor *Pereira* address the immigration court's subject matter jurisdiction over the proceeding.

The Court finds that 8 C.F.R. § 1003.14 and § 1003.15—not 8 U.S.C. § 1229(a)(1) and *Pereira*'s interpretation of that statutory provision—control when and how subject matter jurisdiction vests in an immigration court. Fourth Circuit precedent supports this conclusion. *See, e.g., Sorcia v. Holder*, 643 F.3d 117, 119 n.1 (4th Cir. 2011) (citing § 1003.14(a) for proposition that jurisdiction vests upon filing of notice to appear with the immigration court); *Shogunle v. Holder*, 336 F. App'x 322, 324–25 (4th Cir. 2009) (holding jurisdiction never vested in immigration court because no notice to appear had been filed with the court per § 1003.14(a)). At least one district court has reached the same conclusion in a post-*Pereira* decision. *See United States v. Romero-Colindres*, No. 1:18-cr-00415, 2018 WL 5084877, at *2 (N.D. Oh. Oct. 18, 2018) (noting that neither the "vesting provision [of 8 C.F.R. § 1003.14(a)] nor the definition of charging document under section 1003.13 expressly require that an NTA meet the statutory requirements of 8 U.S.C. § 1229(a)(1)").[7]

Here, Ramos-Delcid makes no argument that the notice to appear filed with the immigration court failed to include the criteria listed in 8 C.F.R. § 1003.15. From the Court's

---

[7] Ramos-Delcid asks the Court to follow two post-*Pereira* district court decisions invalidating indictments charging defendants with illegal reentry on subject matter jurisdiction grounds. *See, e.g., United States v. Zapata-Cortinas*, No. 18-cr-00343, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018) (dismissing indictment under *Pereira* where notice to appear lacked time and place details, reasoning that subject matter jurisdiction never vested because of deficient notice to appear); *United States v. Virgin-Ponce*, No. 2:18-cr-00092, 2018 WL 3655166 (E.D. Wash. July 26, 2018) (same). However, these holdings confuse the requirements for notices to appear filed with the immigration court for jurisdictional purposes under 8 C.F.R. § 1003 with the requirements for notices to appear provided to the alien under 8 U.S.C. § 1229(a)(1)—*Pereira* establishes that time and place details are required for the latter but 8 C.F.R. § 1003.15(b)-(c) do not require such details for the former.

independent review of the notice to appear, it appears compliant with § 1003.15 in all respects. (Dkt. 23-2). Accordingly, the Court finds that because a notice to appear compliant with 8 C.F.R. § 1003.15(b)-(c) was filed with the immigration court, that court had subject matter jurisdiction over Ramos-Delcid's removal proceedings under 8 C.F.R. § 1003.14.

### B. Ramos-Delcid's Collateral Attack Under 8 U.S.C. § 1326(d)

Ramos-Delcid also raises a collateral attack on his deportation order pursuant to 8 U.S.C. § 1326(d), which permits an alien to "challenge the validity" of the deportation order underlying an illegal reentry prosecution if the alien can demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." If an alien "satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

Unlike in the subject matter jurisdiction inquiry addressed above, *Pereira* and the content requirements for notices to appear issued to aliens listed in 8 U.S.C. § 1229(a)(1) have bite in the § 1326(d) inquiry. The Government concedes, as it must, that the notice to appear issued to Ramos-Delcid failed to list the time and date of the removal proceedings. (Dkt. 27 at 2). This defect renders this notice to appear deficient under *Pereira* and the plain text of § 1229(a)(1).[8]

---

[8] The Government attempts to cabin *Pereira* to its specific factual context, the stop-time rule of 8 U.S.C. § 1229b(d). (Dkt. 27 at 7–11). Although the *Pereira* majority indicated that the specific question presented in *Pereira* was "narrow," the majority held that because § 1229(a) employs "quintessential definitional language" in elucidating the required content of a notice to appear, "when the term 'notice to appear' is used elsewhere in the statutory section, *including as the trigger for the stop-time rule*, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S.Ct. at 2116 (emphasis added). Thus, *Pereira* makes clear that the stop-time rule of § 1229b(d) is just one application of its holding regarding the required contents of a notice to appear issued to an alien under § 1229(a). Accordingly, the Government's

*See* 8 U.S.C. § 1229(a)(1)(G)(i) (specifying that notices to appear issued to aliens must include the "time and place at which the proceedings will be held"); *Pereira*, 138 S.Ct. at 2113–114 ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear' under section 1229(a) . . ."). The only question, then, is whether this defect in the notice to appear, and its attendant practical consequences, are sufficient for Ramos-Delcid to successfully challenge the deportation order issued against him under 8 U.S.C. § 1326(d). The Court concludes that Ramos-Delcid has successfully attacked the validity of his deportation order under § 1326(d).

Ramos-Delcid readily satisfies the first two prongs of § 1326(d), which require a showing that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order" and "(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." In *El Shami*, 434 F.3d at 664, the Fourth Circuit held in an illegal reentry case that where immigration officials' "failure to provide notice precluded [the defendant] from attending his deportation hearing in the first instance," the defendant was never "apprised of his right to seek . . . administrative and judicial review," and thus "satisfies the first two requirements for a collateral attack under § 1326(d)." This holding is directly applicable here.

The Government concedes that the notice to appear issued to Ramos-Delcid failed to specify the date and time of his deportation proceedings. (Dkt. 27 at 2). Immigration officials erroneously listed Ramos-Delcid's address as "Charlsville, VA 24175" on the notice to appear, (dkt. 23-2), and then mailed a subsequent "notice of hearing" specifying the date and time of the "master calendar hearing" to this erroneous address. (Dkt. 29). There is no evidence before the

---

contention that "this case is outside the scope of *Pereira*'s limited holding" is without merit. (Dkt. 27 at 1).

Court that Ramos-Delcid ever received this notice, which comes as no surprise given the erroneous address to which the notice was mailed. Given these defects, it is also unsurprising that Ramos-Delcid did not attend his November 4, 2002 hearing in Texas, at which the deportation order in question was issued. (Dkt. 23-1). Accordingly, the Court finds that, as in *El Shami*, because immigration officials' failure to provide proper notice prevented Ramos-Delcid "from attending his deportation hearing in the first instance," Ramos-Delcid was never "apprised of his right to seek . . . administrative and judicial review," and thus "satisfies the first two requirements for a collateral attack under § 1326(d)." *El Shami*, 434 F.3d at 664.[9]

Similarly, Ramos-Delcid satisfies the third prong of § 1326(d), which requires a showing that entry of the deportation order was fundamentally unfair. To demonstrate fundamental unfairness, an alien must show that "(1) his due process rights were violated by defects in his underlying deportation proceeding; and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 665. To demonstrate prejudice, the alien must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *Id*. *See also United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (noting that "the

---

[9] The Government contends that Ramos-Delcid was obligated to "apprise the government" of any "new address" other than the one listed on the notice to appear. (Dkt. 27 at 14). Indeed, the notice to appear issued to Ramos-Delcid prior to his release in Virginia in July 2002 does require him to "provide the INS, in writing, with your full mailing address" and to "notify the Immigration Court immediately . . . whenever you change your address." (Dkt. 23-2). However, on July 12, 2002—before his release but after being served with the notice to appear on the previous day, July 11, 2002—Ramos-Delcid provided his correct Charlottesville, Virginia address on his bond paperwork. (Dkt. 23-6). Ramos-Delcid contended at oral argument that providing the correct address on the bond paperwork fulfilled his obligation to provide immigration officials with his correct address. The Court agrees. Accordingly, because Ramos-Delcid provided immigration officials with a correct address on his bond paperwork after receiving the notice to appear, and because immigration officials presumably had the correct address in their possession at all times during the subsequent proceedings, the Court concludes that the Government, not Ramos-Delcid, committed the ultimate error resulting in defective notice of the time and date of Ramos-Delcid's removal proceedings.

defect in the removal proceedings" identified by the district court "must be linked" to the "resulting prejudice" for a district court to find fundamental unfairness).

The Court finds that Ramos-Delcid's due process rights were violated by the defects in the initial notice to appear and subsequent defects in mailing the notice of hearing to the wrong address. An alien's "fundamental" right of due process includes "the opportunity to be heard at a meaningful time and in a meaningful manner." *El Shami*, 434 F.3d at 664–65 (quoting *United States v. Torres*, 383 F.3d 92 (3d Cir. 2004)). "[D]ue process requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id*. at 665. Although Ramos-Delcid was generally aware of the basic charges against him, the notice to appear he received did not specify the date and time of the forthcoming removal proceedings as required by *Pereira* and the plain text of 8 U.S.C. § 1229(a)(1)(G)(i). (Dkt. 23-2). Moreover, immigration officials failed to send the subsequent notice of Ramos-Delcid's master calendar hearing to the correct address, (dkt. 29), despite Ramos-Delcid's provision of the correct address on his bond paperwork. (Dkt. 23-6). The cumulative effect of these defects deprived Ramos-Delcid of any actual knowledge of the date and time of his initial hearing before an immigration judge, thereby stripping him of a "fair opportunity to be heard" and defend the charges against him. *El Shami*, 434 F.3d at 665.

The Court further finds that these defects caused Ramos-Delcid actual prejudice. Ramos-Delcid argues that, but for the defective notice of the time and date of the proceedings against him, he would have been able to establish his eligibility for pre-order voluntary departure. Under 8 C.F.R. § 1240.26(b)(1)(i), a noncitizen can demonstrate eligibility for voluntary departure by (1) making his request for voluntary departure "prior to or at the master calendar

hearing at which the case is initially calendared for a merits hearing"; (2) making no additional request for relief; (3) conceding removability; (4) waiving appeal of all issues; and (5) not having been convicted of an aggravated felony. Once eligibility is established, the immigration judge must weigh "both favorable and unfavorable factors" and make a discretionary choice whether voluntary departure is appropriate. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264–65 (9th Cir. 2013) (noting that the Board of Immigration Appeals (BIA) has "consistently maintained" this "long established" discretionary approach to granting or denying voluntary departure, and collecting BIA cases to this effect).

Had Ramos-Delcid been informed of the date and time of his master calendar hearing, there is a reasonable probability that, prior to or at this hearing, he would have made a sufficient showing to satisfy all five prongs necessary for an immigration judge to grant pre-order voluntary departure under 8 C.F.R. § 1240.26(b)(1)(i).[10] Ramos-Delcid could have easily met the first four prongs by making his request before or at the master calendar hearing, making no additional requests, conceding his removability, and waiving appeal of all issues. Moreover, there is no evidence before the Court, and the Government does not argue, that Ramos-Delcid has ever been convicted of an aggravated felony. Indeed, Ramos-Delcid contends that his

---

[10] The Government argues that Ramos-Delcid "could have sought voluntary departure prior to his hearing" upon receiving the initial notice to appear "but chose not to." (Dkt. 27 at 16). This argument is unavailing because the notice to appear Ramos-Delcid received on July 11, 2002 informed him that he would be "advised by the immigration judge" at his initial hearing "of any removal for which you may appear eligible including the privilege of departing voluntarily." (Dkt. 23-2 at 2). The notice to appear further stated that Ramos-Delcid would "be given a reasonable opportunity to make any such application" for voluntary departure "to the immigration judge." (*Id.*). Thus, the Court's rejects the Government's assertion that Ramos-Delcid simply "chose not to" seek voluntary departure prior to his master calendar hearing. (Dkt. 27 at 16). That the initial notice to appear instructed Ramos-Delcid that the immigration judge would inform him of his eligibility for voluntary departure at his master calendar hearing, and that Ramos-Delcid never received notice of when this hearing would occur, is simply further evidence of the prejudice visited on Ramos-Delcid by the Government's failure to inform him of the date and time of his master calendar hearing.

14

"criminal record was non-existent." (Dkt. 23 at 17). Thus, it appears that Ramos-Delcid would have been able to satisfy the fifth and final prong required for pre-order voluntary departure under § 1240.26(b)(1)(i). Although the decision whether to grant pre-order voluntary departure is ultimately within the immigration court's discretion upon a weighing of "both favorable and unfavorable factors," several factors would have counseled in favor of voluntary departure, including Ramos-Delcid's lack of a criminal record, his youth (Ramos-Delcid was only 21 years old in 2002), and the reasons for his entry into the United States (to "work and live with his mother in Virginia"). *Rojas-Pedroza*, 716 F.3d at 1264–65; Dkt. 23 at 17. Thus, the Court finds that immigration officials' failure to advise Ramos-Delcid of his initial hearing prejudiced him because, but for this defect, there is a reasonable probability that Ramos-Delcid would have been granted voluntary departure and thereby avoided deportation. Accordingly, because a due process violation occurred that resulted in actual prejudice, Ramos-Delcid satisfies the third prong of § 1326(d) requiring a showing of fundamental unfairness.

The Government argues that Ramos-Delcid would not have been eligible for voluntary removal under a different regulation, 8 C.F.R. § 1240.26(c)(1). Section 1240.26(c)(1) provides that an immigration judge "may grant voluntary departure at the conclusion of the removal proceedings" if he or she finds that (1) the alien has been physically present in the United States for at least one year prior to the date the notice to appear was served; (2) the alien is, and has been, a person of good moral character for at least five years preceding the application; (3) the alien has not been convicted of an aggravated felony; and (4) the alien has established "by clear and convincing evidence" that he or she has the means of departing the United States and genuinely intends to do so. The Government contends that if Ramos-Delcid had moved for voluntary departure at the end of his removal hearing he would not have been able to establish

15

physical presence in the United States for at least one year prior to the date of the initial notice to appear, since the July 11, 2002 notice to appear was issued just days after Ramos-Delcid allegedly crossed the border into Texas on July 6, 2002. (Dkt. 27 at 2, 16).

It may well be true that Ramos-Delcid would not have been eligible for voluntary removal at the end of his removal proceedings under 8 C.F.R. § 1240.26(c)(1) because of the one-year residency requirement. However, the fact remains that the initial notice to appear failed to inform Ramos-Delcid of the date and time of his initial master calendar hearing, at which there is a reasonable probability he could have avoided deportation by successfully arguing for voluntary departure under a different provision, 8 C.F.R. § 1240.26(b)(1)(i). Indeed, had Ramos-Delcid been apprised of the date and time of his master calendar hearing, he could also have moved for voluntary departure via a stipulation by the Immigration and Naturalization Service (INS) for up to 30 days *after* the master calendar hearing, pursuant to 8 C.F.R. § 1240.26(b)(1)(ii), which permits an immigration judge to grant voluntary departure within 30 days of the master calendar hearing if the INS "stipulate[s] to a grant of voluntary departure." *See* 8 C.F.R. § 1240.26(b)(2) ("At any time prior to the completion of the removal proceedings, the Service counsel may stipulate to a grant of voluntary departure . . ."). But without any notice of when this master calendar hearing would take place, Ramos-Delcid was unable to move for pre-order voluntary departure under either § 1240.26(b)(1)(i) or § 1240.26(b)(2). Thus, even if the Government is correct about Ramos-Delcid's ineligibility for voluntary departure at the conclusion of his removal hearing under § 1240.26(c)(1), Ramos-Delcid was still prejudiced by immigration officials' failure to provide notice of the date or time of his master calendar hearing.

In sum, the Court finds that Ramos-Delcid has satisfied all three prongs necessary for a collateral attack of a deportation order under § 1326(d). Accordingly, his "illegal reentry charge must be dismissed as a matter of law." *El Shami*, 434 F.3d at 665.

## IV. CONCLUSION

For the foregoing reasons, the Court granted Ramos-Delcid's motion to dismiss the indictment and struck this case from the Court's docket. (Dkt. 31).

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order, (dkt. 31), to Mainor Alberto Ramos-Delcid and all counsel of record.

Entered this  7th  day of November, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE